## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**LOTUS INDUSTRIES, LLC D/B/A CENTRE PARK BAR**, Case No. 17-cv-
**CHRISTOPHER WILLIAMS, ROBERT DAVIS,** and
**A FELON'S CRUSADE FOR EQUALITY,**                         Hon.
**HONESTY, AND TRUTH,** a Michigan Nonprofit Corporation                 ,
                 Plaintiffs,
v

**CITY OF DETROIT,** a municipal corporation**,**
**DENNIS ARCHER, JR., IGNITION MEDIA, TOTAL OUTDOOR,** and
**RUTH JOHNSON,** in her official and individual capacities as the duly elected
Secretary of State
                 Defendants.
_____/

ANDREW A. PATERSON (P18690)
*Attorney for Plaintiffs*
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com
_____/

> There is a cause of action between the same or similar parties arising out the
> same transaction or occurrence.  The case, *Lotus, et. al. v Duggan, et. al.,* Case
> No. 16-cv-14112, is assigned to Judge Laurie Michelson and remains pending.

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

NOW COME PLAINTIFFS, LOTUS INDUSTRIES, LLC D/B/A CENTRE

PARK BAR ("**Plaintiff Lotus**"), CHRISTOPHER WILLIAMS ("**Plaintiff**

**Williams**"), ROBERT DAVIS (**"Plaintiff Davis"**), and A FELON'S CRUSADE

FOR EQUALITY, HONESTY, TRUTH ("**Plaintiff A Felon's Crusade**"), by and

through their attorney, Andrew A. Paterson, and for their Verified Complaint for Declaratory Judgment and Injunctive Relief ("**Verified Complaint**"), states the following:

## I.     NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiffs' individual claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367; the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq;* and civil RICO statute, 18 U.S.C. §§ 1964(a) and 1965(a).

## II.     JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. 1983; 28 U.S.C. §§ 1331, 1332, 1337, 1343, and 1367.

3. This Court also has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

4. Venue is proper under 28 U.S.C. § 1391 because Plaintiffs are residents of the Eastern District of Michigan, and the actions giving rise to the allegations asserted in this Complaint all occurred within the Eastern District of Michigan.

## III.   PARTIES

5. Plaintiff, Robert Davis[1] (**"Plaintiff Davis"**), is a registered elector of the City of Highland Park, County of Wayne, State of Michigan.  Plaintiff Davis is also a well-known community and union activist, who has volunteered and been involved in many civic and political causes. (**See Plaintiff Davis' Affidavit attached hereto as Exhibit A**).

6. Plaintiff, A Felon's Crusade for Equality, Honesty, and Truth ("**Plaintiff A Felon's Crusade**"), is a properly registered Michigan non-profit corporation organized and incorporated in June 2016 for the purpose of promoting and ensuring corrupt-free and law-abiding civic government through social actions and court actions designed to eliminate unlawful and illegal actions by all government offices, representatives and entities on all levels of government.  In accordance with the Michigan Nonprofit Corporation Act, Plaintiff A Felon's Crusade is governed by a three-member board of directors.  (**See Plaintiff Davis' affidavit attached as Exhibit A**).

---

[1] On September 2, 2014, Plaintiff Davis pled guilty before Senior United States District Court Judge Arthur Tarnow ("**Judge Tarnow**") in Criminal Case No. 12-20224.  On December 18, 2014, Judge Tarnow sentenced Plaintiff Davis to serve 18 months at a minimum security camp in Montgomery, Alabama on the Maxwell Air Force Base ("**FPC Montgomery**").  Plaintiff Davis began serving his term of imprisonment at FPC Montgomery on March 13, 2015 and has since been released and is free under supervised release.

7. Plaintiff, Lotus Industries LLC, d/b/a Centre Park Bar ("**Plaintiff Lotus**"), is a limited liability company organized under the laws of the State of Michigan, whose principal place of business is located at 1407 Randolph Street, Detroit, Michigan 48226, which is in the Harmonie Park section of downtown Detroit, and which is now called the Paradise Valley Cultural and Entertainment District.

8. Plaintiff, Christopher Williams ("**Plaintiff Williams**"), is co-operator of Centre Park Bar. (**See Plaintiff C. Williams' affidavit attached as Exhibit B**).

9. Defendant, Ruth Johnson ("**Defendant Secretary of State**"), is the duly elected Secretary of State for the State of Michigan. Pursuant to Mich. Comp. Laws § 168.21 of Michigan Election Law, Defendant Johnson is the "chief election officer of the state" that has "supervisory control over local election officials in the performance of their duties under the provisions of this act."

10. Defendant, City of Detroit ("**Defendant Detroit**"), is a municipal corporation that is governed by a local city charter in accordance with the Home Rule Cities Act.

11. Defendant Dennis Archer, Jr. ("**Defendant Archer**") is the managing member of Gotham Capital Partners, LLC, owner of Defendant Ignition Media, and is also a hired consultant for the Defendant Total Outdoor.

12. Defendant Total Outdoor ("**Defendant Total Outdoor**"), is an outdoor advertising and billboard company based in Seattle, Washington.

13. An actual controversy exists between the Plaintiff and the named Defendants.

## IV.   CAUSES OF ACTION

### COUNT I

**Civil RICO Claim Against Defendants Archer, Ignition Media and Total Outdoor Pursuant to 18 U.S.C. §§ 1962(c) and 1964.**

14. Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

15. Plaintiffs, individually and collectively, have standing to bring their Civil RICO claim against Defendants Archer and Total Outdoor pursuant to 18 U.S.C. § 1964(c).

16. This Court has jurisdiction over Plaintiffs' Civil RICO clam pursuant to 18 U.S.C. §§ 1964(a) and 1965(a).

17. Through a sophisticated and deliberate scheme, Defendants Archer and Total Outdoor have engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

18. Specifically, Defendants Archer and Total Outdoor have deliberately and intentionally violated the Defendant City of Detroit's sign ordinance by unlawfully selling signage on the side of prominent office buildings in downtown Detroit.

19. Ordinance No. 61-6-65 prevents illegal signage on the side of buildings located in downtown Detroit.

20. In spite of the clear and unambiguous language of Ordinance No. 61-6-65, Defendants Archer and Total Outdoor have nonetheless unlawfully sold billboard signage to corporate clients in violation of Ordinance No. 61-6-65.

21. Defendants Archer and Total Outdoor could be charged and convicted of multiple related violations of law, which form a pattern and practice and which violations are each potentially punishable by more than one year in jail.

**Predicate Criminal Acts of Federal Wire Fraud Statute, 18 U.S.C. § 1343**

22. The Defendants Archer and Total Outdoor could be charged and convicted of multiple, related violations of law which form a pattern and

practice and which violations are each potentially punishable by more than one year in prison constituting wire fraud.

23. Defendants Archer and Total Outdoor acted in criminal violation of the federal wire fraud statute under 18 U.S.C. § 1343.

24. 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

25. Defendants Archer and Total Outdoor derived or intended to devise a scheme or artifice meant to defraud and/or obtain money or property from the unlawful selling of billboard signage on the side of prominent office buildings in downtown Detroit.

26. Defendants utilized false or fraudulent pretenses, representations, and/or promises in order to defraud and/or obtain money and/or property as a

result of the Defendant City of Detroit failing to properly enforce
Ordinance 61-6-65.

27. Defendants Archer and Total Outdoor transmitted or caused to be
transmitted by means of wire, internet, radio, or television
communication in interstate or foreign commerce, writings, signs,
signals, pictures, or sounds for the purpose of executing such scheme or
artifice when they transmitted telephone and cellular telephone calls,
documents, facsimiles, emails, instant messages, text messages, and any
other form of communication.

28. Violation of 18 U.S.C. §1343 is a felony punishable by up to 20 years of
imprisonment and a fine of $1 million.

## Injury to Plaintiffs' Property

29. Defendants Archer and Total Outdoor's criminal actions have caused
significant harm to Plaintiffs' property.

30. Specifically, Defendants Archer and Total Outdoor's criminal actions
have caused irreparable harm to Plaintiffs Lotus and Williams by
damaging their business at Centre Park Bar.  Said damages to Plaintiffs
Lotus and Williams' business exceed $75,000.

31. Additionally, Plaintiffs' property have individually been injured as a
result of Plaintiffs having to use their personal funds to pay costs

associated with obtaining public documents that show Defendants Archer and Total Outdoor's criminal conduct.

32. As a result of Defendants Archer's Ignition Media's and Outdoor Media's unlawful conduct and actions, Plaintiffs seek damages in excess of $75,000.

## COUNT II

## Civil RICO Claim-Award of Treble Damages Pursuant to 18 U.S.C. § 1964(c).

33. Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

34. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs individually and collectively, respectfully request the Court to award treble damages, including court costs and attorney fees, in excess of $75,000.

35. As noted, Plaintiffs' property have individually been injured as a result of Plaintiffs having to use their personal funds to finance and pay certain and costs associated with obtaining certain public documents that illustrates Defendants Archer's, Ignition Media, and Total Outdoor's fraudulent scheme.

36. Additionally, as noted, Plaintiffs Lotus' and Williams' business has been damaged in excess of $75,000 as a result of Defendants Archer's, Ignition Media, and Total Outdoor's fraudulent scheme.

## COUNT III- DEFENDANT ARCHER CONSPIRED WITH DEFENDANT CITY OF DETROIT, DUGGAN, DDA, CHIEF CRAIG TO RETALIATE AGAINST PLAINTIFFS FOR EXERCISING THEIR FIRST AMENDMENT RIGHTS

37. Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

38. On November 19, 2016, the Detroit Free Press ran an article in which Plaintiffs Lotus and Williams expressed their concerns with respect to the tainted bidding process that led to the Detroit Downtown Development Authority awarding Defendant Archer the right to own and develop Centre Park Bar.

39. Plaintiffs Lotus and Williams were very critical of Defendant Archer and his purported unlawful and questionable conduct, which were accurately quoted and printed in the November 2016 Detroit Free Press article.

40. After the Detroit Free Press story was published, Plaintiffs Lotus and Williams appeared on a popular local radio show in which the Plaintiffs Lotus continued to express their discontent with Defendant Archer's unlawful conduct.

41. Soon thereafter, Plaintiffs Lotus and Williams filed a federal lawsuit against the DDA, DEGC, Detroit Chief of Police, Defendant Archer, and Mayor Duggan.

42.Since that time, Defendant Archer has retaliated against Plaintiffs Lotus and Williams by engaging in a mean-spirited campaign to get Plaintiff Lotus evicted from Centre Park Bar.

43.Plaintiffs Lotus and Williams believe and allege that Defendant Archer's political relationships and connections with and to the high level elected officials of the Defendant City of Detroit, has allowed Defendant Archer to conspire with the Detroit Downtown Development Authority ("DDA") to acquire Centre Park Bar and to cause retaliation against the Plaintiffs for their public exposure of such actions.

44.Specifically, Plaintiffs Lotus and Williams believe that Defendant Archer has conspired with Defendant City of Detroit, Detroit Mayor Mike Duggan, DDA, and Detroit Police Chief Craig by privately requesting and encouraging certain business owners in the Paradise Valley area to call the police to complain about "loud music" being played at Centre Park so that Plaintiffs Lotus and Williams would be ticketed by the Detroit Police.

45.Plaintiffs Lotus and Williams believe and allege that Defendant Archer and representatives of the DDA and Duggan had a private agreement that they will do 'whatever it takes' to ensure that Centre Park is evicted from the Centre Park Bar property so that it can be transferred to Defendant

Archer and his company, Gotham, so that they can commence their business instead of the Plaintiffs' business at Centre Park Bar.

46. Specifically, Plaintiffs believe and allege that Defendant Archer and the DDA, DEGC, and Duggan had a prior private agreement that Defendant Archer and his company, Gotham, would be awarded the development agreement to develop the Centre Park Bar, which Plaintiff Lotus currently leases.

47. Defendant Archer had a private conversation with Plaintiff Williams and Scott Bridgewater ("Bridgewater") during the RFP process, in which Defendant Archer informed Plaintiff Williams and Bridgewater that Defendants Duggan, DDA and DEGC had already assured Defendant Archer that Defendant Gotham would be awarded the contract to develop the Property.

48. During the RFP process, in October 2015, Defendant Archer invited Plaintiff Williams to a private meeting that was being held the office of James Jenkins, who is a member of the DDA.  At this meeting, Rev. Wendell Anthony, Hiram Jackson, Chris Jackson, and Defendant Archer were present.  During this meeting, James Jenkins expressed that it had already been determined by the Defendant City of Detroit, Duggan, and

DDA, which bidders would be awarded the contracts to develop certain properties within Paradise Valley.

49. Additionally, Defendant Archer and Duggan and Chief Craig have a private agreement that at any time any business owner in the Paradise Valley area calls to complain about "loud music" coming from Centre Park that Chief Craig would deploy officers to Centre Park to issue noise complaint citations to Plaintiff Williams and Centre Park patrons, and further require Plaintiffs Williams and Lotus to shut down the Plaintiffs Lotus and Williams' business at Centre Park for the remainder of the evening.

50. Plaintiffs Lotus and Williams believe that Defendant Archer has conspired with the Defendant City of Detroit to have noise complaint tickets issued to establish a pretextual basis to use to terminate the Plaintiff Lotus' Centre Park lease with the DDA.

51. In fact, the DDA has used these manufactured noise tickets as a basis to void Plaintiff Lotus' lease agreement in subsequent landlord tenant proceedings.

52. Defendant Archer's unlawful actions amount to a form of retaliation against the Plaintiffs Lotus and Williams for exercising their First Amendment Rights of Free Speech.

## <u>COUNT IV  - STATE LAW CLAIM- DECLARATORY JUDGMENT DECLARING DEFENDANTS CITY OF DETROIT AND ARCHER ARE VIOLATING SIGN ORDINANCE NO. 61-6-65</u>

53. Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

54. Defendants City of Detroit and Archer have engaged in unlawful ad illegal activity with respect to outdoor advertising attached to side of commercial buildings in downtown Detroit.

55. Ordinance No. 61-6-65 prevents illegal signage on the side of buildings located in downtown Detroit.

56. Despite the clear and unambiguous language of Ordinance No. 61-6-65, Defendant City of Detroit has permitted Defendant Archer and Outdoor advertising to sell illegal signage to corporate entities that are displayed illegally on the side of commercial buildings located in downtown Detroit.

57. In September 2016, David Bell, Director of the Defendant City of Detroit's Building, Safety Engineering and Environmental Department, sent out written notices to owners of commercial buildings in downtown Detroit informing them that the signage on their buildings were illegal and were in violation of Ordinance No. 61-6-65.

58. In spite of this written notice to land owners from Mr. Bell, the Defendant City of Detroit has permitted the Defendant Archer, on behalf of Defendant Total Outdoor, to continue to unlawfully sell advertising to corporate entities for the purpose of their corporate advertising being hung prominently on the side of commercial buildings in downtown Detroit.

59. Upon information and belief, Defendant Archer has engaged in a *quid pro quo* campaign to bribe local elected officials, including Mayor Duggan, and many members of the Detroit City Council, in order to prevent the proper enforcement of Ordinance No. 61-6-65.

60. Campaign finance records reveal that Defendant Archer and individuals affiliated with his criminal enterprise have contributed thousands of dollars to the campaigns of Mayor Duggan and members of the Detroit City Council.

61. As further evidence that the Defendants City of Detroit and Archer have engaged in a conspiracy to prevent Ordinance No. 61-6-65 from being properly enforced, the Defendant City of Detroit has spent numerous resources to try to prevent the Plaintiffs Lotus and Williams from playing music outside of Centre Park Bar.

62. The Defendant City of Detroit has not engaged in the same aggressive efforts to abate the unlawful signage that has been unlawfully sold and prominently hung by the Defendants Archer and Total Outdoor on the side of commercial buildings.

63. Upon information and belief, Defendants Archer and Total Outdoor have profited millions of dollars as a result of being permitted to unlawfully sell and hang signage on the side of commercial buildings located in downtown Detroit.

64. Defendants Archer and Total Outdoor's unlawful actions of profiting from this illegal activity amounts to a criminal enterprise under the federal RICO statute.

65.  Thus, the entry of a declaratory judgment declaring that the Defendants City of Detroit, Archer, and Total Outdoor are violating Ordinance No. 61-6-65 and further declare that said signage must be removed.


**COUNT V**

**Mich. Comp. Laws § 169.254(1), On Its Face and As Applied To Plaintiff A Felon's Crusade, Is Unconstitutional For It Violates Plaintiff A Felon's Crusade's First Amendment Right of Political Speech.**

66.  Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

67. This claim is brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act.

68. This claim seeks prospective declaratory relief against Defendant Secretary of State, in her official capacity.

69. On March 13, 2017, Plaintiff Davis, as a director of the Plaintiff A Felon's Crusade, sent a written request, via electronic mail, to the Defendant Secretary of State requesting a declaratory ruling regarding the application of the Michigan Campaign Finance Act ("MCFA"), specifically, Mich. Comp. Laws § 169.254(1), as it pertained to Plaintiff A Felon's Crusade's ability to make a direct monetary political donation to a candidate committee.

70. On October 3, 2017, Defendant Secretary of State issued a written response to Plaintiffs Davis and A Felon's Crusade's request to issue a declaratory judgment.

71. Specifically, Defendant Secretary of State's October 3, 2017 written response advised Plaintiffs Davis and A Felon's Crusade "that the express language of the MCFA conclusively answers the question you posed, and does not require any further interpretation or clarification by the Department[.]"

72. Plaintiff A Felon's Crusade desires to exercise its First Amendment Rights and make a direct monetary campaign donation to a candidate running for Mayor of the City of Detroit from Plaintiff A Felon's Crusade's treasury.

73. Additionally, Plaintiff A Felon's Crusade would also like to make a direct monetary campaign donation to candidates running for governor in the upcoming 2018 gubernatorial election.

74. However, Mich. Comp. Laws § 169.254(1) of the MCFA prohibits corporations like Plaintiff A Felon's Crusade from making a direct monetary contribution to a candidate committee.

75. Mich. Comp. Laws § 169.254(5) of the MCFA makes it a crime for a person to violate Mich. Comp. Laws §169.254(1) of the MCFA. Pursuant to Mich. Comp. Laws §169.254(5) of the MCFA, it is a felony for a "person" to violate Mich. Comp. Laws §169.254(1) of the MCFA.

76. Plaintiffs Davis and A Felon's Crusade fear being prosecuted if Plaintiffs Davis and A Felon's Crusade violate Mich. Comp. Laws § 169.254(1) of the MCFA.

77. However, Mich. Comp. Laws § 169.254(1) of the MCFA is an outright ban on corporations, like Plaintiff A Felon's Crusade, to exercise their First Amendment Right of core political speech.

78. Plaintiffs Davis and A Felon's Crusade believe Mich. Comp. Laws §169.254(1) of the MCFA violates Plaintiff A Felon's Crusade's First Amendment Right to exercise their core political speech.

79. Political speech does not lose First Amendment protection simply because its source is a corporation.

80. First Amendment protection extends to corporations.  Like a human being, Plaintiff A Felon's Crusade, as a registered nonprofit corporation, enjoys protections under the First Amendment.

81. Therefore, Mich. Comp. Laws § 169.254(1) of the MCFA's outright ban prohibiting corporations from making direct monetary campaign contributions to candidate committees violate Plaintiff A Felon's Crusade's First Amendment Rights.

82. Mich. Comp. Laws §169.254(1) of the MCFA on its face, and as applied to Plaintiff A Felon's Crusade violates Plaintiff A Felon's Crusade's First Amendment Rights.

## COUNT VI
## Plaintiff Shall Be Awarded Compensatory, Punitive and Nominal Damages.

83. Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

84. This claim seeks an award of compensatory, punitive and nominal damages against the Defendant Secretary of State, in her individual capacity, for violating Plaintiff and A Felon's Crusade's First Amendment Rights.

85. Plaintiff A Felon's Crusade respectfully request the Court to award compensatory, punitive and nominal damages against the Defendant Secretary of State, in her individual capacity, for violating Plaintiff A Felon's Crusade First Amendment Rights.

86. Plaintiff A Felon's Crusade seeks an award of damages.

## COUNT VII - DEFENDANT CITY OF DETROIT'S NOISE ORDINANCE IS UNCONSTITUTIONALLY VAGUE AND VOID

87. Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

88. Plaintiffs Williams and Lotus have repeatedly been ticketed by the Defendant City of Detroit for purportedly violating the Defendant City of Detroit's noise ordinance.

89. The Defendant City of Detroit noise ordinance does not define the level of noise that constitutes a violation of the Defendant City of Detroit's noise ordinance.

90. Moreover, the Defendant City of Detroit's noise ordinance is arbitrarily enforced by the officers of the Detroit Police Department.

91. Officers of the Defendant City of Detroit do not have any equipment to properly measure the level of noise emanating from any establishment.

92. The Defendant City of Detroit's noise ordinance permits police officers to apply a subjective standard with respect to the ordinance's enforcement.

93. No other establishment has been ticketed for a noise violation in spite of playing music outdoors.

94. Plaintiffs Williams and Lotus have been unfairly subjected to harassment by the Defendant City of Detroit and its police department in their unlawful attempt to assist the DDA to try to unlawfully evict Plaintiff Lotus from the premises.

95. Additionally, Defendant City of Detroit has engaged in this unlawful behavior and has engaged in contentious harassment of the Plaintiffs Williams and Lotus in a blatant attempt to assist Defendant Archer in acquiring Centre Park Bar.

96. Accordingly, Defendant City of Detroit's noise ordinance must be declared void by this Honorable Court because it is unconstitutionally vague.

## COUNT VIII
## Plaintiffs Shall Be Awarded Court Costs and Attorney Fees Under 42 U.S.C. § 1988.

97. Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

98. This claim is brought pursuant to 42 U.S.C. §§ 1983, 1988.

99. Plaintiffs hall be awarded their attorney's fees and costs pursuant to 42 U.S.C. § 1988 for any relief granted for any of the counts properly pled and alleged herein against the named Defendant.  See *Déjà vu of Nashville Inc. v Metro Gov't of Nashville and Davison County*, 421 F.3d 417 (6th Cir. 2005; and see also, *Berger v City of Mayfield Heights*, 265 F.3d 399, 406-407 (6th Cir. 2001).

## V.    CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiffs pray that this Honorable Court GRANT the following requested relief:

A. Issue a declaratory judgment declaring that Mich. Comp. Laws § 169.254(1) of the Michigan Campaign Finance Act, which prohibits corporations from making direct monetary campaign contributions to political campaign committees is unconstitutional for it violates the First Amendment.

B. Issue injunctive relief enjoining Defendant Ruth Johnson from enforcing the provisions of Mich. Comp. Laws § 169.254(1) of the Michigan Campaign Finance Act, for it violates the First Amendment of the United States Constitution.

C. Issue a declaratory judgment declaring that the Defendant Archer conspired with the Defendant City of Detroit, DDA, and DEGC and retaliated against Plaintiffs Lotus and Williams for exercising their First Amendment Rights.

D. Issue a declaratory judgment declaring that the Defendant City of Detroit's noise ordinance is unconstitutional and void for vagueness.

E. Grant Plaintiffs relief against the Defendants Archer, Ignition Media and Total Outdoor in accordance with the federal Civil RICO statute.

F. Issue a declaratory judgment declaring that Defendants Archer, Ignition Media and Total Outdoor unlawful conduct violate the federal Civil RICO statute.

G. Award Plaintiffs damages in accordance with 18 U.S.C. § 1964(c).

H. Award Plaintiffs their attorney fees and costs pursuant to 42 U.S.C. § 1988 against all of the named Defendants.

I. Grant any further relief the Court deems appropriate, just and proper.

Dated: October 25, 2017                         Respectfully submitted,

                                                */s/ ANDREW A. PATERSON*
                                                ANDREW A. PATERSON (P18690)
                                                Attorney for Plaintiffs
                                                2893 E. Eisenhower Pkwy
                                                Ann Arbor, MI 48108
                                                (248) 568-9712
                                                aap43@outlook.com