UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Lotus Industries, et al.,

      Plaintiffs,

v.                                   Case No. 17-13482

City of Detroit, et al.,             Sean F. Cox
                                       United States District Court Judge

      Defendant.
_____/

## **OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND, GRANTING THE CITY OF DETROIT'S MOTION TO DISMISS, GRANTING SECRETARY JOHNSON'S MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART ARCHER AND IGNITION MEDIA'S MOTION TO DISMISS**

This case is another installment in a long-running saga involving the redevelopment of property at the former location of Centre Park Bar in Detroit. The bar and its co-operator, Christopher Williams, have sued the City of Detroit, Dennis Archer Jr., and his company Ignition Media, alleging an overarching conspiracy between them and others to facilitate Archer's acquisition of the Centre Park Bar property. Specifically, Plaintiffs have brought claims for civil RICO, First Amendment retaliation, a declaration that Archer and the City are violating the City's sign ordinance, and a declaration that the City's noise ordinance is unconstitutionally vague. They have also moved for leave to amend, seeking to add claims against the City for selective and vindictive prosecution.

Along with these claims, the complaint also involves an unrelated issue–a challenge to Michigan's prohibition on direct campaign contributions by corporations. Two Plaintiffs, Robert Davis and the non-profit corporation A Felon's Crusade, have sued Michigan Secretary of State

1

Ruth Johnson, seeking a declaration that the statute violates the First Amendment.

All of these claims are now before the Court on three separate motions to dismiss filed by Defendants, along with a motion for leave to amend filed by Plaintiffs. For the reasons below, the Court will deny the motion for leave to amend because it was filed in bad faith. As for the dispositive motions, the Court shall grant the City's motion due to insufficient service of process. The Court will also grant Secretary Johnson's motion because Plaintiffs have failed to state a claim. Finally, the Court shall grant Archer and Ignition Media's motion as to the civil RICO and sign ordinance claims but deny the motion as to the First Amendment retaliation claim. So, all that remains is the claim for First Amendment retaliation by Plaintiffs Christopher Williams and Lotus Industries against Defendant Archer.

## BACKGROUND

There are four Plaintiffs here: Robert Davis, the non-profit corporation A Felon's Crusade for Equality, Honesty, and Truth, Lotus Industries LLC (d/b/a Centre Park Bar), and the co-operator of Centre Park Bar, Christopher Williams.[1] Complaint, ¶¶ 5-8. Together, they have sued the following Defendants: Michigan Secretary of State Ruth Johnson, the City of Detroit, Ignition Media, and the owner of Ignition Media, Dennis Archer, Jr. *Id*. at ¶¶ 9-11.[2]

Several of Plaintiffs' claims revolve around Detroit City Ordinance 61-6-65, which

---

[1] Since filing the complaint, Lotus Industries has gone bankrupt and Charles J. Taunt has been appointed as Chapter 7 Trustee. The parties have previously stipulated to dismiss Lotus as a plaintiff as to all counts except the First Amendment retaliation claim and the request for court costs and attorney fees (Doc. # 49). At the hearing, however, counsel for Lotus indicated that it has now settled those claims with Defendants, pending approval by the bankruptcy court.

[2] Plaintiffs also sued Total Outdoor, an outdoor advertising and billboard company, which has since been voluntarily dismissed from this case (Doc. # 5).

prohibits illegal signage from being displayed on the side of buildings located in downtown Detroit. *Id*. at ¶ 19. Plaintiffs allege that, despite this ordinance, the City of Detroit has permitted Archer to sell signage to corporate entities, displaying it unlawfully on the side of commercial buildings in downtown Detroit. *Id*. at ¶ 18, 56. Archer allegedly bribed local officials, including Detroit Mayor Mike Duggan and members of the Detroit City Council, to prevent proper enforcement of the sign ordinance. *Id*. at ¶ 59. In the course of this conduct, Archer and Ignition Media purportedly committed federal wire fraud, causing unspecified damages to Lotus and Williams by damaging their business at Centre Park Bar. *Id*. at ¶¶ 23-27, 30. Lotus and Williams also had to use personal funds to pay unspecified costs associated with obtaining public documents to show this alleged criminal conduct. *Id*. at ¶ 31.

Yet this is not the only illicit conduct attributed to Archer. Other allegations of impropriety stem from Plaintiffs' criticism of Archer's alleged attempts to acquire Centre Park Bar. In a November 19, 2016 Detroit Free Press article, Williams and Lotus expressed their concern about an allegedly tainted bidding process that led to the Detroit Downtown Development Authority awarding Archer the right to own and develop Centre Park Bar, criticizing Archer's purported unlawful and questionable conduct. *Id*. at ¶ 38-39. Later, Plaintiffs also appeared on a local radio show and again expressed their discontent with Archer. *Id*. at ¶ 40.

Lotus and Williams followed up this commentary by filing a federal lawsuit against Archer, the Detroit Development Authority, Detroit Economic Growth Corporation, the Detroit Chief of Police, and Mayor Duggan. *Id*. at ¶ 41. Since then, Plaintiffs allege, Archer has retaliated against them by engaging in a "mean-spirited campaign" to evict Lotus from Centre

Park Bar. *Id*. at ¶ 42. He has used his political relationships and connections to aid him in conspiring with the Development Authority to acquire the bar. *Id*. at ¶ 43. To facilitate this acquisition, Archer has allegedly conspired with other municipal defendants to privately request and encourage business owners nearby Centre Park Bar to call the police to complain about loud music being played at the bar, leading to Lotus and Williams being ticketed. *Id*. at ¶ 44.

The reason for this scheme? To evict Plaintiffs and transfer the property to Archer. *Id*. at ¶¶ 45-48. And the scheme has paid off–the Development Authority has allegedly used manufactured noise complaint tickets as a basis to void Lotus' lease agreement. *Id*. at ¶¶ 50-51. Indeed, Williams and Lotus have been repeatedly ticketed for purportedly violating the City of Detroit's noise ordinance. *Id*. at ¶ 88. These tickets, they allege, are not only a product of the above conspiracy, but also result from arbitrary enforcement by the Detroit Police Department, which does not have any equipment to properly measure the level of noise emanating from an establishment. *Id*. at ¶¶ 90-91.

Along with the above allegations, the complaint also presents entirely unrelated allegations relating to the claim by Robert Davis and A Felon' Crusade. A Felon's Crusade desires to make direct monetary contributions to a candidate running for mayor of the City of Detroit and to candidates in Michigan's upcoming gubernatorial election, but § M.C.L. § 169.254(1) currently prohibits corporations from making direct monetary contributions to candidates. *Id*. at ¶¶ 72-74. A Felon's Crusade and Robert Davis fear being prosecuted if they violate this law, which they contend violates their First Amendment rights. *Id*. at ¶¶ 76-77.

From the above allegations, eight counts spring: (1) a civil RICO claim under 18 U.S.C. § 1962(c) against Archer and Ignition Media; (2) a request for treble damages under 18 U.S.C.

§ 1964(c); (3) a First Amendment retaliation claim against Archer; (4) a request for a declaratory judgment that the City of Detroit and Archer are violating sign ordinance 61-6-65; (5) a request for a declaratory judgment that M.C.L. § 169.254(1) is unconstitutional because it violates the First Amendment; (6) a request for damages against Secretary Johnson for violating Plaintiff's First Amendment rights; (7) a request for a declaratory judgment that the City of Detroit's noise ordinance is unconstitutionally vague; and (8) a request for attorney's fees and costs under 42 U.S.C. § 1988.

Defendants have all moved to dismiss (Doc. # 14, 19, 37), and Plaintiffs have responded (Doc. # 28, 29, 30, 43, 44). Plaintiffs Williams, Davis, and A Felon's Crusade have also moved for leave to file a first amended complaint, seeking to bolster the allegations supporting their RICO claim and to add selective enforcement and vindictive prosecution claims against the City (Doc. # 51). Defendants have responded, opposing the request for leave to amend (Doc. # 55, 56). Charles Taunt has also responded, noting that he has not joined in Plaintiffs' request (Doc. # 57). The Court held a hearing on all of these motions on August 9, 2018.

## STANDARD OF DECISION

Defendants have moved to dismiss on several different grounds. One is Rule 12(b)(1), which "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). It is Plaintiffs' burden to prove subject matter jurisdiction by a preponderance of the evidence. *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 794 (6th Cir. 2015).

Another proposed ground for dismissal is Rule 12(b)(5), under which a defendant challenges the mode of serving a summons and complaint. *See Nafziger v. McDermott Int'l, Inc.*,

467 F.3d 514, 520-21 (6th Cir. 2006). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Actual knowledge of the action is not enough, the plaintiff must comply with the requirements of Rule 4(m). *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991). When addressing a Rule 12(b)(5) motion, the Court necessarily considers matters outside the pleadings. *See In re American Camshaft Specialties, Inc.*, 410 BR. 765, 772 (E.D. Mich. 2009). The Court may also "weigh and determine disputed issues of fact." *Cranford v. United States*, 359 F.Supp.2d 981, 984 (E.D. Cal. 2005).

There is also Rule 12(b)(6), which provides for dismissal when the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, the Court must also address Plaintiffs' motion for leave to amend their complaint. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). But denial may be appropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the

amendment, etc." *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 613 (6th Cir. 2005).

## ANALYSIS

### I. Plaintiffs' Motion for Leave to Amend

To begin, there are two procedural matters to address. The first: whether to grant Plaintiffs' motion for leave to amend their complaint.[3] Archer opposes this request, arguing that it is unduly prejudicial and made in bad faith. He notes that he was deposed as a non-party witness in a different case filed by Lotus and Williams. *Lotus Industries, LLC v. Duggan*, Case No. 16-14112. In that case, Judge Michelson issued a protective order, limiting the use of Archer's deposition to her case only. *See* Doc. # 56, Ex. B. Despite this, Archer observes, several of the allegations in the amended complaint are drawn directly from that deposition, including an allegation that Archer is the sole owner of Ignition Media, Proposed Amended Complaint, ¶ 19, and a direct reference to Archer's deposition. *Id.* at ¶ 35 ("Similarly, when asked during a deposition as to whether Defendant Archer has paid monetary bribes to Detroit Councilman Gabe Leland, Defendant Archer refused to answer the question.").[4]

Plaintiffs have flagrantly disregarded a court order by relying on Archer's deposition in

---

[3] This motion presents a procedural oddity–Lotus did not join it. But because the proposed amendment does not alter Lotus' sole remaining claim, which it has already agreed to settle, the Court will not to deny leave to amend on this basis.

[4] This particular allegation is a stark misrepresentation of the testimony on which it relies. When Plaintiffs' counsel referenced Leland's deposition, Archer's counsel immediately objected and Plaintiffs' counsel then moved on without Archer ever providing an answer. *See* Doc. # 56, Ex. C. The Court may consider this deposition, which is referred to in the complaint and central to Plaintiffs' claims, when ruling on the motions here. *See Bassett v. Nat'l Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)

crafting their amended complaint. Their troubling inclusion of allegations pulled straight from

Archer's deposition is bad faith conduct that is only exacerbated by their clear

misrepresentations about the substance of Archer's testimony. Granting Plaintiffs leave to

amend in these circumstances would allow them to circumvent the clear protective order issued

by Judge Michelson. It would also be prejudicial to Defendants, as the allegations Plaintiffs seek

to add in bad faith are not minor aspects of the complaint, but are fundamental to their amended

RICO claim. Indeed, the allegation pertaining to the ownership of Ignition Media is the only

part of the proposed complaint pertaining to the conduct of an enterprise–an essential element of

a civil RICO claim. *See Ouwinga v. Benistar 419 Plan Services Inc.*, 694 F.3d 783, 794-95 (6th

Cir. 2012). (holding a complaint stated a claim when it alleged an organizational structure,

delineated the specific roles and relationships of the defendants, and alleged that it existed for a

common purpose). Under the circumstances, the Court does not find it appropriate to grant leave

to amend. So, the Court will exercise its discretion and deny Plaintiffs' motion to amend their

complaint. *See Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 729 (6th

Cir. 2009) (observing that district courts can exercise their discretion to deny a motion for leave

to amend based on bad faith or dilatory motive).

## II. Whether Plaintiffs Have Properly Served the City of Detroit

The second procedural matter is one the Court has dealt with before–whether Plaintiffs

have properly served the City of Detroit. This threshold requirement has caused Plaintiffs some

difficulty. After initially filing suit, they failed to timely serve the City or Secretary Johnson.

Then, when they attempted to effect service, they failed to do so properly. When Defendants

moved to dismiss on this basis, Plaintiffs asked for another bite at the apple. Although Plaintiffs

did not show good cause for the deficient service, the Court exercised its discretion and gave Plaintiffs another chance, providing them additional time to properly serve the City and Secretary Johnson (Doc. # 36). That should have been the end of the matter.

Indeed, Plaintiffs had a number of options available to them. They could have delivered a copy of the summons and the complaint to the mayor, the City's chief executive officer. Fed.R.Civ.P. 4(j)(2)(A). Or they could have served a summons and copy of the complaint on the city clerk or the city attorney. M.C.R. 2.105(G)(2); *see also* Fed.R.Civ.P. 4(j)(2)(B) (allowing service in the manner prescribed by state law). Or they could have served "a person in charge of the office of an officer on whom service may be made" and sent "a summons and a copy of the complaint by registered mail addressed to the officer at his or her office." M.C.R. 2.105(G).

Yet, despite this array of options, the City claims that Plaintiffs chose none of them, instead merely delivering a copy of the summons and complaint to the City Law Department's receptionist. It is Plaintiffs' burden to establish that proper service was effected. *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F.Supp.2d 561, 563 (E.D. Mich. 2006).

One way for Plaintiffs to make a prima facie showing of service would be to produce a return of service identifying the recipient. *Relational, LLC v. Hodges*, 627 F.3d 668, 672 (7th Cir. 2010). The proof of service here falls short. In it, Plaintiffs' attorney stated:

> I personally served a copy of the re-issued summons dated June 1, 2018, and a copy of the complaint for the above-entitled matter upon:
>
> > Defendant City of Detroit
> > City of Detroit Law Department
> > 2 Woodward Ave., 5th Floor
> > Detroit, MI 48226
>
> > The City of Detroit's Law Department, who is authorized to accept service on behalf of the Defendant City of Detroit, accepted service of the re-issued

summons and complaint on behalf of the Defendant City of Detroit. The Law Department, of course, is not a person, and the proof of service does not otherwise indicate the identify of the specific person served. Nor could counsel provide this information at the hearing, stating only that he served the receptionist.

This information is not enough for Plaintiffs to carry their burden. There is no indication that they properly served any of the persons authorized to accept service as specified by federal or state rules. And it should go without saying that Plaintiffs have not shown good cause for their failure to properly serve the City after receiving an extension of time for proper service. Having already exercised its discretion to give Plaintiffs a second chance, the Court will not give them a third. Thus, because of the insufficient service, the Court lacks personal jurisdiction over the City. *See Omni Capital*, 484 U.S. at 104. The Court shall therefore dismiss Plaintiffs' claims against the City without prejudice, resulting in the dismissal of Count Four (Sign Ordinance claim) as to the City and the dismissal of Count Seven (Noise Ordinance Claim) in its entirety.

### III. Civil RICO

Turning to Plaintiffs' claims, first is Christopher Williams' civil RICO claim under 18 U.S.C. § 1962(c) against Archer and Ignition Media. In essence, Williams claims that by intentionally violating the City of Detroit's sign ordinance, Archer, along with now-dismissed Total Outdoor, engaged in a pattern of racketeering activity.

"To state a RICO claim, a plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ouwinga*, 694 F.3d at 791. Even if Williams has satisfactorily alleged that Archer engaged in conduct of an enterprise (a dubious proposition), he has failed to satisfactorily allege a pattern of racketeering activity.

Williams alleges that Archer has committed the following violations of the law: violating the City of Detroit's sign ordinance, federal wire fraud, and other unspecified felonies. None of these allegations pass muster. To allege a pattern of racketeering activity, Plaintiffs must, of course, allege predicate acts of *racketeering*. *See id*. at 795. A municipal ordinance violation does not fit the bill. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity"). Nor does an allegation of unspecified "related violations of law," which does not come remotely close to satisfying the *Twombly* and *Iqbal* standard.

As for the allegation that Archer has committed the predicate act of wire fraud, this is a crime that is considered "racketeering activity." 18 U.S.C. § 1961(1). But the complaint merely regurgitates the elements of wire fraud over the course of three paragraphs. *See* Complaint, ¶¶ 25-27. It contains no specific factual allegations as to Archer's alleged "scheme or artifice to defraud" or as to his alleged "use of interstate wire communications in furtherance of the scheme." *See United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (listing the elements of wire fraud). Nor does it set forth sufficient allegations to show a *pattern* of racketeering activity, which requires at least two related acts of racketeering activity that amount to or pose a threat of continued criminal activity. *Ouwinga*, 694 F.3d at 795. Absent these allegations, Williams has not stated a civil RICO claim, and his request for treble damages fails as well. *See Satchel v. Township*, 2016 WL 6158965, at * 4 n. 2 (E.D. Mich. 2016) (noting that "damages are a remedy, not a cause of action."). Thus, the Court shall dismiss Counts One and Two.

### IV. First Amendment Retaliation

In Count Three, Lotus and Williams bring a First Amendment retaliation claim under 42 U.S.C. § 1983 against Archer. To state a claim, Plaintiffs must show that (1) Archer acted under

color of state law and (2) that his conduct deprived them of rights secured under federal law. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

At first blush, it might appear that Plaintiffs' claim fails to make it out of the gate; after all, Archer is a private actor. *See Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) ("A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct.") (internal quotations omitted). But this is not the be-all and end-all; the "under color of state law" requirement can be satisfied if Plaintiffs plausibly allege that Archer's "conduct that allegedly gave rise to the deprivation of [their] constitutional rights may be fairly attributable to the State." *Marie v. American Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (internal quotations omitted).

Archer argues that Plaintiffs have failed to do so under any of the four different tests that this Circuit has adopted for that purpose. *See id.* ("(1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test"). But these tests are "relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors." *American Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004); *see also Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 . . ."). And a conspiracy is precisely what Plaintiffs have alleged–that Archer conspired with municipal government officials and entities to retaliate against Plaintiffs.

The question, then, is whether Plaintiffs have sufficiently alleged that Archer conspired with these state actors to violate Plaintiffs' First Amendment rights. *See Revis v. Meldrum*, 489

F.3d 273, 292 (6th Cir. 2007) ("[C]laims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors for the purposes of deciding a motion to dismiss.").  To properly plead the existence of a civil conspiracy, Plaintiffs must allege: (1) the existence of a single plan, (2) that the alleged coconspirator shared in the general conspiratorial objective, and (3) an overt act committed in furtherance of the conspiracy that caused injury to Plaintiffs.  *Local 96*, 361 F.3d at 905, quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  This must be done with "some degree of specificity," as "vague and conclusory allegations unsupported by material facts" will not suffice.  *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009).

The allegations here are akin to those made in *Local 96*, and, as in that case, Plaintiffs have sufficiently alleged all three elements of a civil conspiracy.  First, the existence of a single plan: A private agreement between Archer, representatives of the Development Authority, Detroit Police Chief Craig, and Mayor Duggan. *See Local 96*, 361 F.3d at 905 (holding the statement "was the result of an agreement" satisfactorily alleged that a single plan existed).  Second, that the conspirators shared in a general conspiratorial objective: To use pretextual noise complaints to void Lotus' lease agreement and evict it from Centre Park Bar.  *See id*. (holding the alleged conspiratorial objective "to deprive [the Union] of its rights, privileges, and immunities" was sufficient).  The complaint also specifically alleges that Archer was aware of and shared in this objective. *Cf. Bickerstaff v. Lucarelli*, 830 F.3d 388, 401 (6th Cir. 2016) (holding that the failure to allege that the defendant knew of relevant events meant that she could not have plausibly shared in the "general conspiratorial objective").  Finally, an overt act in furtherance of the conspiracy that injured Plaintiffs: The issuance of pretextual noise tickets,

which were later relied upon to void Lotus' lease agreement. *See Local 96*, 361 F.3d at 906 (holding that allegations that the defendant directed police officers to harass, threaten, and intimidate the plaintiff, causing injury, satisfied the overt act element). Thus, at least at this stage, Plaintiffs have sufficiently alleged that Archer acted under color of state law by way of a civil conspiracy.

Yet that is not enough to state a claim. Plaintiffs must also plausibly allege that Archer's conduct violated their rights. For this, they must allege that: (1) "they engaged in constitutionally protected conduct;" (2) Archer "took an adverse action against them that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) "the adverse action was motivated at least in part by their protected conduct." *Marie*, 771 F.3d at 360.

First, Archer does not appear to contest that Plaintiffs have plausibly alleged that they engaged in constitutionally protected conduct. Nor could he; the complaint alleges that Plaintiffs engaged in at least two forms of conduct protected by the First Amendment: making comments in the press and filing a federal lawsuit against Archer and various municipal officials and entities. *See Fritz*, 592 F.3d at 723 (comments in the press); *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (filing a lawsuit).

Next, the adverse action requirement. For this, "any action that would deter a person of ordinary firmness from exercising protected conduct will suffice." *Fritz*, 592 F.3d at 724; *see also Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010) ("[T]he harassment necessary to rise to a level sufficient to deter an individual is not extreme."). Plaintiffs allege that Archer conspired with City officials to issue noise complaints and tickets against them. The

issuance of these tickets were adverse actions–they would deter a person of ordinary firmness from engaging in protected conduct. *See Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 645 (6th Cir. 2015) (holding that the numerous ordinance violation tickets issued to the plaintiffs "patently constitute[d] adverse actions"); *see also Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011) ("[O]nly *de minimis* violations should be dismissed as a matter of law; in general, the adverseness question should survive the pleading stage.").

So, the final question is whether Plaintiffs have sufficiently alleged a causal connection between their protected conduct and the adverse action. This is a two-party inquiry: Plaintiffs "must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Bright v. Gallia County, Ohio*, 753 F.3d 639, 653 (6th Cir. 2014).

As to proximate cause, Plaintiffs allege that Archer conspired with municipal officials and entities to issue the pretextual noise violation tickets. Although Plaintiffs do not allege that he issued the tickets directly, or ordered an officer to issue them, Archer's alleged participation in the conspiracy is enough, at this stage, to allow the Court to infer causation. This is because all acts taken in furtherance of the conspiracy can be attributable to Archer, an alleged conspirator. *See United States v. Hayter Oil Co., Inc. of Greeneville, Tenn.*, 51 F.3d 1265, 1271 (6th Cir. 1995). Thus, Plaintiffs have, at this stage, plausibly alleged that Archer's actions proximately caused the adverse action.

So, the next question is whether Archer was motivated at least in part by Plaintiffs' protected conduct. Two factors guide this inquiry: (1) whether Archer knew of the protected

conduct; and (2) whether "the chronology of events supports an inference of causation, such as temporal proximity between the speech and the adverse action." *Bright*, 753 F.3d at 653 (internal quotations omitted).

Here, Archer was assuredly aware of the federal lawsuit filed against him in 2016–his attorney entered an appearance and he eventually stipulated to a dismissal without prejudice. *See* Case No. 16-14112, Doc. # 17, 23; *see also Bassett*, 528 F.3d at 430 (observing that a court may consider public records when deciding a Rule 12(b)(6) motion). It is also reasonable to infer that he was aware of critical comments made by Plaintiffs about him in the Detroit Free Press and on a popular local radio show. And Plaintiffs allege that these statements and their lawsuit led Archer to retaliate against them by engaging in a campaign to evict them from Centre Park Bar.

These allegations are by no means substantial, and the Court notes that the complaint, at least implicitly, suggests that any noise ticket conspiracy began prior to Plaintiffs' protected conduct. At the same time, however, the allegations here are on par with the ones deemed satisfactory in *Bright*. There, all the plaintiff alleged was that the defendant knew of his conduct, took an adverse action against him soon after, and that the action was retaliation for the plaintiff exercising his freedom of speech. *Bright*, 753 F.3d at 654. Here, Plaintiffs have alleged the same–that Archer knew of their protected conduct and retaliated against them for it soon after. And, at this stage, the Court cannot consider competing rationales, such as the possibility that the noise tickets had a legitimate law enforcement justification. *Id*. Thus, as in *Bright*, when accepting the allegations as true and drawing all inferences in Plaintiffs' favor, the amended complaint states a First Amendment retaliation claim. *Id*. Thus, the Court shall deny Archer's Motion to Dismiss as to Count Three.

# V. Sign Ordinance 61-6-65

In Count Four, Williams' allegations echo those supporting his RICO claim–that Archer has been violating the City of Detroit's sign ordinance and that the City has been complicit in those violations. So, he seeks a judgment declaring that Archer and the City are violating the sign ordinance and requiring the unlawful signage to be removed. As discussed above, this claim is a non-starter as to the City–the Court lacks personal jurisdiction. But it also fails as to Archer (and the City) for another reason–Plaintiffs lack standing.

Article III standing is fundamental to establishing federal jurisdiction over a claim. *See Morrison v. Bd. of Ed. of Boyd County*, 521 F.3d 602, 608 (6th Cir. 2008). It is axiomatic that "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The injury suffered must be "concrete and particularized," not "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). As the party invoking federal jurisdiction, Williams bears the burden of establishing these elements. *Id*. at 1547. He has not met his burden here.

At best, Williams alleges two supposed injuries–unspecified damage to his business at Centre Park Bar and the use of personal funds to pay costs associated with obtaining unspecified public documents that allegedly show Archer's illicit conduct. The former allegation, however, only invites conjecture, pleading no facts as to the nature of the injury suffered or how that injury is fairly traceable to Archer's alleged violation of the sign ordinance. This falls far short of the requirements of Article III.

As for the latter alleged injury, Williams again fails to plead with any degree of

specificity, providing no facts as to the documents obtained or the amount spent to obtain them. And, even if he had, he cites no authority for the proposition that a party can use self-inflicted investigation costs to bootstrap standing. Nor can he establish standing by virtue of the alleged violation of the City's sign ordinance. Standing may not be predicated on a claim that the law has been violated absent an identifiable personal injury suffered *as a consequence* of that violation, something Williams has not satisfactorily alleged. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485 (1982). Thus, because Williams has failed to allege a cognizable injury-in-fact stemming from Archer's alleged violations of the sign ordinance, he lacks standing and the Court will grant the motion to dismiss as to Count Four.

## VII. M.C.L. § 169.254(1)

This brings the Court to Davis and A Felon's Crusade, who have sued Michigan Secretary of State Ruth Johnson, challenging Michigan's statutory prohibition against direct monetary contributions by corporations to political candidates. *See* M.C.L. § 169.254(1); *see also* M.C.L. § 169.204(1) (defining "contribution" as any payment, gift, expenditure, or the like, made for the "purpose of influencing the nomination or election of a candidate, for the qualification, passage, or defeat of a ballot question, or for the qualification of a new political party."). They allege that A Felon's Crusade wishes to make direct monetary contributions to candidates running in the upcoming Detroit mayoral and gubernatorial elections. To do so, however, would be a felony. M.C.L. § 169.254(5). So, Plaintiffs seek a declaration that § 254(1) violates their First Amendment rights.

### a. Standing

Before reaching the merits, the Court must first address two limits on jurisdiction invoked by Defendant: standing and ripeness. Again, "[t]he standing requirement ensures that the plaintiff has a personalized injury that the court can directly redress." *Platt v. Bd. of Comm'rs on Grievances and Discipline of the Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir. 2014). "And the ripeness requirement prevents courts from hearing premature or abstract disagreements." *Id*. These doctrines originate from the same Article III limitation and may be analyzed together. *Id*.

Whether Plaintiffs have standing to challenge § 254(1) turns on whether they have suffered a "concrete and particularized" injury in fact. *Id*. This does not require them to subject themselves to actual arrest or prosecution to meet the injury in fact requirement. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015). Indeed, "in a pre-enforcement review case under the First Amendment (like this one), courts do not closely scrutinize the plaintiff's complaint for standing when the plaintiff claims an interest in engaging in protected speech that implicates, if not violates, each provision of the law at issue." *Platt*, 769 F.3d at 451 (internal quotations omitted). Thus, Plaintiffs meet the requirements of Article III if the threat of enforcement of § 254(1) is "sufficiently imminent." *Id*.; *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."). This requires Plaintiffs to allege (1) "'an intention to engage in a course of conduct' implicating the Constitution" and that (2) "the threat of enforcement of the challenged law" against them is "credible." *Platt*, 769 F.3d at 451-52, quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). They have done so here.

First, Plaintiffs clearly allege that they wish to engage in political speech (implicating the First Amendment) by making monetary contributions to candidates in upcoming elections. *See Platt*, 769 F.3d 452 ("Platt has desired to engage in political speech (certainly implicating the First Amendment) that violates the Code."); *Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014) (holding the intention to engage in commercial speech implicated a constitutional interest).

Second, Plaintiffs' fear that § 254(1) will be enforced against them if they make those contributions is credible. Because the statute prohibits the precise conduct that Plaintiffs wish to engage in, they must self-censor their desired political speech lest they violate § 254(1). *See Platt*, 769 F.3d at 452 (holding self-censorship of political speech to avoid violating the Ohio Code of Judicial Conduct amounted to a "credible fear of enforcement."). What's more, the Secretary has not disavowed the possibility that Plaintiffs would face criminal charges if they were to make the prohibited contributions. *See Babbit*, 442 U.S. at 302; *Platt*, 769 F.3d at 452; *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 696 (6th Cir. 2015) (holding the plaintiffs had standing to challenge a ballot access statute when the state defendants had not "explicitly disavowed enforcing it in the future."). Taken together, Plaintiffs have shown a "credible fear of enforcement," and therefore have alleged "an injury in fact that is ripe for judicial review." *Platt*, 769 F.3d at 452; *Carey v. Wolnitzek*, 614 F.3d 189, 196 (6th Cir. 2010) (holding the plaintiff's "credible fear of enforcement" overcame any ripeness concerns).

### b. Laches

Next, Defendant urges that this claim is barred by laches. "Laches arises from an extended failure to exercise a right to the detriment of another party." *Ottawa Tribe of Oklahoma v. Logan*, 577 F.3d 634, 639 n. 6 (6th Cir. 2009). "A party asserting laches must

show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001).

Defendant argues that Plaintiffs have unreasonably and unnecessarily delayed in bringing their challenge despite their full knowledge of the challenged law and of the legal authority upon which they rely. To a degree, Defendant has a point; Robert Davis is well aware of Michigan's campaign finance laws, having previously filed a very similar challenge to § 254(1), which was dismissed on other grounds. *See Citizens United v. Garret*, Docket. No. 14-12795 (E.D. Mich. 2014). But, as Plaintiffs note, A Felon's Crusade was only recently incorporated in 2016. And although this suit was not filed until October 2017, Davis initially sought a declaratory ruling from the Secretary of State on the issue via an e-mail sent on March 13, 2017. Not until seven months later did Defendant respond, after which Plaintiffs promptly filed their lawsuit. In doing so, they did not seek last-minute relief; their complaint was filed over a year before the scheduled general election. Thus, Plaintiffs acted with reasonable diligence here.

Even if they had not, Defendant has not shown prejudice. The prejudice component of laches contemplates changed circumstances in the lapse of time that inequitably prejudice another, such as by misleading a person into thinking the claim was abandoned or by making the claim more difficult to defend against. *See Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007), quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2946 at 117 (2d ed. 1995). But here, Defendant has presented little more than the general assertion that candidates and donors who have relied on § 254(1) would be prejudiced. This falls far short of showing "some substantial administrative or logistical

difficulties, confusion, disorganization, or expense which would be caused" if the Court allowed

Plaintiffs to bring their claim. *Mich. Chamber of Commerce v. Land*, 725 F.Supp.2d 665, 682

(W.D. Mich. 2010); *cf. Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) (finding prejudice when

the state had already expended about $400,000). Thus, Defendant has not met her burden and

the doctrine of laches does not bar Plaintiffs' claim.

### c. Merits

Yet this is a hollow victory for Plaintiffs, as their claim fails on the merits. The Supreme

Court has upheld bans on direct corporate contributions to candidates, noting that these bans

prevent corruption or the appearance of corruption. *See Fed. Election Comm'n v. Beaumont*, 539

U.S. 146, 154 (2003). These restrictions "have been treated as merely marginal speech

restrictions subject to relatively complaisant review under the First Amendment, because

contributions lie closer to the edges than to the core of political expression." *Id*. at 161. So,

restrictions on contributions pass muster if they are "closely drawn" to match a "sufficiently

important interest." *Id*. at 162. And of course, limiting *quid pro quo* corruption and its

appearance satisfies this requirement. *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434,

1444 (2014) (opinion of Roberts, C.J.). For this reason, the Supreme Court has upheld federal

law prohibitions on corporations contributing directly to candidates for federal office.

*Beaumont*, 539 U.S. at 154; *see also Land*, 725 F.Supp.2d at 674 ("Supreme Court case law

permits a State to prohibit corporations and labor unions from making 'contributions' to

candidates."). The statute at issue here is no different.

The decision in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), did not

alter this legal landscape. Indeed, *Citizens United* was concerned with limits on *expenditures*,

not contribution limits–an important distinction. *See id*. at 359 (observing that contribution limits, "unlike limits on independent expenditures, have been an accepted means to prevent *quid pro quo* corruption.") (internal citation omitted).  Nothing in *Citizens United* repudiated the Supreme Court's jurisprudence as to direct corporate contributions; in fact, the Court did not even consider the question.  *See id*. (observing that the plaintiff did not suggest "that the Court should reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny.").  And Plaintiffs do not even cite *Beaumont*, let alone offer a persuasive rationale for why its reasoning does not apply to § 254(1).  As in *Beaumont*, the statute here is consistent with the First Amendment.  Thus, Plaintiffs have failed to state a claim, and the Court shall dismiss Counts Five and Six.

## CONCLUSION

For the reasons above, the Court ORDERS that Plaintiffs' motion for leave to amend is DENIED.

IT IS FURTHER ORDERED that the City of Detroit's motion to dismiss is GRANTED due to insufficient service of process. The Court also ORDERS that Secretary Johnson's motion to dismiss is GRANTED for failure to state a claim.  Finally, the Court ORDERS that Archer and Ignition Media's motion to dismiss is GRANTED IN PART AND DENIED IN PART.  The Court GRANTS the motion as to the  civil RICO and declaratory judgment claims but DENIES the motion as to the First Amendment retaliation claim. Thus, the only remaining claim in this case is the First Amendment retaliation claim by Williams and Lotus against Archer.

IT IS SO ORDERED.

s/Sean F. Cox                  
Sean F. Cox
United States District Judge

Dated:  August 22, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Lotus Industries, et al.,

      Plaintiffs,

v.                             Case No. 17-13482

City of Detroit, et al.,         Sean F. Cox
                                  United States District Court Judge

      Defendant.
_____/

**PROOF OF SERVICE**

      I hereby certify that a copy of the foregoing document was served upon counsel of record

on August 22, 2018, by electronic and/or ordinary mail.

                        s/Jennifer McCoy_____
                        Case Manager