UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOTUS INDUSTRIES, LLC, et al.,

    Plaintiffs,

v.                                                  Case No. 2:17-cv-13482

                                                  Honorable Sean F. Cox

CITY OF DETROIT, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT DENNIS ARCHER JR.'S MOTION FOR SUMMARY JUDGMENT

Following the Court's August 22, 2018 Opinion and Order, the only claim remaining in this action is Plaintiff Christopher Williams's First Amendment Retaliation claim against Defendant Dennis Archer, Jr. Williams alleges that Archer (a private citizen) conspired with public officials from the City of Detroit to target him with excessive-noise tickets after he publicly accused Archer and the City of bid-fixing. After nearly a year of discovery and dozens of discovery motions and requests by Williams, Archer now moves for summary judgment.

Because Williams cannot identify any evidence that Archer ever conspired with any public official, the Court will grant Archer's motion for summary judgment.

## BACKGROUND

Starting in April 2013, the Detroit Development Authority ("DDA") rented a property in the Harmonie Park neighborhood of downtown Detroit to Lotus Industries, LLC. Ex. B, Def.'s Stat. of Material Facts Not in Dispute ("DSMFND") (ECF No. 177-3). At this property, Lotus operated the Centre Park Bar. Williams Dep. 7:24-8:5 (ECF No. 177-2, PageID 3771). Plaintiff Christopher

Williams served as one of Lotus's managers and its treasurer, but was not an owner or member of that entity. *Id.* at 8:14-22, 9:13-19. Williams also served as a manager of Centre Park Bar. *Id.* at 10:23-25.

In September 2015, the DDA issued a request for proposal ("RFP") as part of its efforts to redevelop properties in Harmonie Park. Ex. F, DSMFND (ECF No. 177-7, PageID 3837). Williams and his business partner, Kenneth Bridgewater, submitted a bid in response to this RFP, but the DDA informed them that their bid would not be considered because it was late. Williams Dep. 43:21-44:10 (ECF No. 177-2, PageID 3778). Instead, the DDA accepted five other bids, one of which had been submitted by Defendant Dennis Archer, Jr. Ex. F, DSMFND (ECF No. 177-7, PageID 3837). Archer's bid included a plan to purchase the building that Lotus leased from the DDA. *Id.*

After his bid was rejected, Williams became vocal about his displeasure with the DDA's bid process. On November 19, 2016, the Detroit Free Press published a story wherein Williams described the bid process as "flawed and unethical" and claimed that Archer had been given preferential treatment because of his family's political connections. (ECF No. 177-9, PageID 3856, 3858). Williams accused city officials, Archer, and the DDA of "displacing a black business out of nowhere" and "castrating the economic development for blacks in the city." *Id.* Williams also alleged that the police had begun targeting the Centre Park Bar "as part of a plan to get them out of the building before their lease expires in 2018 so that Archer can open his own restaurant there." (ECF No. 177-9, PageID 3857).

Around the time of the Free Press article, Williams also appeared on a radio show and stated that Archer had approached him during the RFP process and told him that he was "going to

automatically get it" and that the Centre Park Bar should "get on his program." Williams Dep. 31:20-32:21. Williams accused the DDA of giving Archer preferential treatment by considering his bid even though it—like Williams's unconsidered, late-filed bid—had "violated" the bidding process rules. *Id.*

Also on November 19, 2016, Lotus, one of Lotus's members, Williams, and Bridgewater filed a lawsuit against Detroit city officials, the Detroit Economic Growth Corporation ("DEGC"), the DDA, Archer, and one of Archer's companies. *See Lotus Industries, LLC et. al. v. Duggan, et. al.* (Case No. 16-14112) ("*Lotus I*"). Williams alleged that the defendants had retaliated against him for criticizing the DDA's bid process by issuing noise complaints against Centre Park Bar. This case was assigned to United States District Court Judge Laurie J. Michelson. On May 9, 2017, Judge Michelson entered a stipulated order dismissing Archer and his company from *Lotus I* without prejudice. (Case No. 16-14112, ECF No. 33).

On June 27, 2017, the DDA began eviction proceedings against Lotus. Ex. F, DSMFND (ECF No. 177-11). Eventually, Lotus filed for bankruptcy and its trustee terminated the lease on April 20, 2018.

On October 25, 2017, Williams filed this lawsuit against the City of Detroit, Archer, and one of Archer's companies, alleging civil RICO wire-fraud claims and First Amendment retaliation claims, and seeking various declaratory judgments. (ECF No. 1). On August 22, 2018, the Court disposed of several motions to dismiss, leaving only Williams's First Amendment retaliation claim against Archer. (ECF No. 62).

On September 18, 2018, the Court held a scheduling conference, where—in accordance with its usual practice—it allowed the parties to choose their own discovery dates. On September 20,

2018, the Court entered a scheduling order that provided that discovery would close on April 30, 2019. (ECF No. 79).

The Court referred all discovery matters to Magistrate Judge Anthony P. Patti. (ECF No. 102). Throughout the discovery period, Judge Patti disposed of over a dozen discovery motions or requests, the vast majority of which were filed by Williams.

On March 25, 2019, the Court entered an amended scheduling order that extended discovery until June 14, 2019. (ECF No. 118). On June 6, 2019, Judge Patti entered an order that allowed discovery to continue until August 13, 2019 for the purposes of taking depositions. (ECF No. 144).

In *Lotus I*, on June 7, 2019, Judge Michelson granted the DEGC's motion to dismiss, concluding that Williams lacked standing to bring his claims in that action. (Case No. 16-14112, ECF No. 227). Because the motion had been brought only by the DEGC, Judge Michelson ordered the remaining parties to brief the issue of whether her conclusion necessitated the dismissal of other claims in the action. On July 22, 2019, Judge Michelson granted summary judgement on Williams's claims to the defendants, concluding that he lacked any evidence of an official policy of retaliation. (Case No. 16-14112, ECF No. 234, PageID 7141); *Bridgewater v. Harris*, 2019 WL 3289845 (E.D. Mich. 2019).[1]

Back in this case, Williams filed a motion to terminate his counsel on August 6, 2019. (ECF No. 166). The Court scheduled a hearing for that motion. On August 13, 2019—the last day that

---

[1] At least one claim of Williams's co-plaintiff survived summary judgment and proceeded to a bench trial. At the time of this Opinion and Order, Judge Michelson has not yet rendered her decision in that case.

discovery was open for depositions—Williams's attorney filed a request[2] to compel the continued deposition of the DDA's general counsel, Rebecca Navin. (ECF No. 173). Judge Patti denied that request, without prejudice, because the pending motion to terminate Williams's counsel cast doubt on counsel's authority to file on behalf of Williams.

On September 4, 2019, Archer filed this motion for summary judgment. In it, he argues that (1) Williams lacks standing to bring this claim; (2) Williams cannot establish a civil conspiracy; (3) Williams is collaterally estopped from bringing this claim; (4) Williams's claim is not supported by any evidence; and (5) Williams, himself, has not suffered any damages.

On September 27, 2019, the Court denied Williams's motion to terminate his counsel. (ECF No. 179). Hours later, Williams filed another request to continue Navin's deposition, which was stricken for failing to comply with this case's protective order. Williams refiled his request on October 7, 2019. (ECF No. 183). Judge Patti granted that request and ordered briefing and a hearing on that issue.

On October 11, 2019, Williams responded to Archer's motion for summary judgment. (ECF No. 187). In the first part of his response, Willams argues that he "needs additional time to conduct additional discovery." Specifically, Williams contends that the continued deposition of Navin was necessary for him to successfully defend against Archer's motion for summary judgment. Williams then argues (1) that he has standing because he was personally issued excessive-noise tickets; (2) that he is not collaterally estopped from bringing this claim; and (3) that he has "thoroughly and sufficiently pled and alleged" his claims. On October 25, 2019, Archer filed a reply. (ECF No. 191).

---

[2]Judge Patti entered an unopposed protective order in this case that required the parties to obtain the Court's approval before filing any discovery motions. (ECF No. 88).

On November 26, 2019, Judge Patti denied Williams's motion to continue deposing Navin, concluding that the objected-to invocation of the common-interest privilege had been proper. (ECF No. 203).

**ANALYSIS**

**I.  Applicable Standard**

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving parties bear the burden to show that there is no genuine issue of material fact, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005); *see also Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005) ("Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (citations omitted).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, that shows there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## II. Request for Additional Discovery

In the first section of Williams's response, he urges the Court to deny Archer's motion under Rule 56(d) because, despite the nearly year-long discovery period and his extensive discovery motion practice, he has not received a full opportunity to conduct discovery.

Rule 56(d) provides:

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Williams's counsel filed a declaration, asserting that he needed additional time to conduct the continued deposition of DDA general counsel Rebecca Navin. (ECF No. 187-2). This requested deposition—which is the only reason that Williams gives for his Rule 56(d) request—was the subject of one of Williams's motions to compel.[3] On November 27, 2019, Judge Patti denied this motion. Thus, this request for additional discovery has already been rejected. Moreover, based on its knowledge of this case, the Court is confident that Williams has received a full and fair opportunity to conduct discovery. Thus, his Rule 56(d) request is denied.

## III. Williams's Standing

Archer argues that the shareholder standing doctrine bars Williams's claim because he has

---

[3]When Williams filed his response to Archer's motion, Judge Patti had approved his request to file a motion to compel Navin's continued deposition, but the motion had not yet been filed. Thus, this issue was unresolved at the time that Williams filed his response to Archer's motion for summary judgment.

7

not alleged that he has been harmed in any way separate from the harm that was inflicted on Lotus.

In *Lotus I*, Judge Michelson, considering an identical argument, summed up the shareholder standing doctrine:

> The doctrine says shareholders cannot sue in their individual capacities to redress injuries suffered by the corporation. *See Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990); *Nicholson v. Ticketmaster*, 42 F. App'x 696, 697 (6th Cir. 2002). Where a shareholder's claim derives from an injury to the corporation, the shareholder's claim belongs to the corporation. *See* 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 5911 (Perm. ed. 2000). A shareholder may only sue where the shareholder personally suffers an injury distinct from the corporation's injury. *See Harker v. Troutman (in Re Troutman Enters., Inc.)*, 286 F.3d 359, 364 (6th Cir. 2002).

*Williams v. City of Detroit,* 2019 WL 2410719 at *3 (E.D. Mich. June 7, 2019).

Williams argues that the shareholder standing doctrine does not bar his claim because he is not seeking redress for an injury to Lotus. Rather, he has been injured by four excessive-noise tickets that were issued to him personally and, he argues, in retaliation for his criticism and the filing of *Lotus I*. Williams has filed docket sheets for state-court actions that stemmed from these tickets. (Case No. 16-14112, ECF No. 231).

The existence of these tickets shows a harm that is separate and distinct from any harm associated with Lotus. *See Bridgewater v. Harris*, 2019 WL 3289845 at *2 (E.D. Mich. July 22, 2019) (evaluating an identical argument raised by Williams and concluding that he had standing). Thus, Williams's standing to bring his First Amendment retaliation claim is not defeated by the shareholder standing doctrine.

### IV. The Existence of a Civil Conspiracy

To succeed on his claim of First Amendment retaliation, Williams must show that (1) Archer acted under color of state law and (2) that Archer's conduct deprived him of rights secured under

8

federal law. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Although Archer is a private actor, he may still act under the color of state law if he conspires with public officials to violate constitutional rights. *Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 . . .").

Throughout this case, Williams has contended that Archer conspired with the "City of Detroit, Detroit Mayor Mike Duggan, DDA, and Detroit Police Chief [James] Craig" through a series of "private agreements" to drive the Centre Park Bar out of business. Compl. ¶ 37-52. In *Lotus I*, Judge Michelson granted summary judgement in favor of these city officials and entities on Williams's identical First Amendment retaliation claims directed against them, concluding that Williams had failed to show objective evidence of an official policy of retaliation. Archer argues that Judge Michelson's order, which disposed of Williams's corresponding claims against all of Archer's alleged co-conspirators, also disposes of Williams's § 1983 claim against him because "you must have two or more persons or entities to have a conspiracy." (ECF No. 176, PageID 3479) (quoting *Audio Visual Equip. and Supplies, Inc. v. County of Wayne*, 2007 WL 4180974 at *6 (E.D. Mich. 2007)). Archer also argues that Williams is collaterally estopped from challenging this determination because it was fully litigated in *Lotus I*.

In response, Williams argues that he has "thoroughly and sufficiently pled and alleged that [Archer] conspired with certain elected and appointed officials. . . to retaliate against" him. (ECF No. 187, PageID 4074). He also argues that "the fact that [DDA general counsel] Rebecca Navin invoked the common interest doctrine with respect to her conversations with Defendant Archer is prima facial evidence that Defendant Archer and officials from the DDA were involved in a

9

conspiracy to retaliate against the Plaintiff." (ECF No. 187, PageID 4079). Finally, Williams includes several copies of minutes from some of the DDA's meetings, seeming to imply that these minutes are somehow indicative of the alleged conspiracy's means and goals.

Williams's lack of evidence of wrongdoing by the specifically identified public officials linked to this case has already been determined by Judge Michelson in *Lotus I*. *See Bridgewater*, 2019 WL 3289845 at *6. However, the existence or non-existence of a conspiracy was not at issue in *Lotus I*. Rather, Judge Michelson granted summary judgment to the City of Detroit, Mayor Duggan, the DDA, and Chief Craig because Williams had not offered "objective evidence of an official policy of retaliation." *Id*. Thus, it does not appear that Williams is "collaterally estopped" from asserting the existence of a conspiracy because that issue was not necessary to the outcome of the prior proceeding. *See Cobbins v. Tennessee Dept. Of Transp*., 566 F.3d 582, 589-90 (6th Cir. 2009).

However, even if Judge Michelson's ruling does not bar a § 1983 claim against Archer, Williams has failed to offer any evidence that could establish a conspiracy in this case. He cannot rest on the fact that he has " thoroughly and sufficiently pled" a conspiracy," but must respond with specific facts, supported by evidence in the record. *See Matsushita*, 475 U.S. at 586. He has not done so. The existence of a conspiracy cannot be inferred from Navin's invocation of the common interest privilege, which Judge Patti found to be proper after review of her deposition transcript and an *in camera* inspection of relevant documents. *See Whitney v. City of Milan*, 2014 WL 11411675 at *1 (W.D. Tenn. 2014) (collecting cases where courts have held that adverse inferences cannot be drawn from the invocation of certain privileges, including the attorney-client privilege); *see also Broessel v. Triad Guar. Ins. Corp*., 238 F.R.D. 215, 219 (W.D. Ky. 2006) (describing the common-

10

interest privilege as a form of attorney-client privilege). And the DDA minutes only report the actions taken by the DDA at the corresponding meeting; they do not link Archer to any unconstitutional action as a co-conspirator. Even viewing everything that Williams cites in the light most favorable to him, no rational trier of fact could find in his favor.

Because Williams has not provided any evidence that Archer conspired with any public officials to retaliate against him, he has not established that Archer was acting under color of state law. Accordingly, Archer cannot be liable under § 1983.

## CONCLUSION

For the reasons above, the Court **GRANTS** Archer's motion for summary judgment.

**IT IS SO ORDERED.**

                                                s/Sean F. Cox  
                                                Sean F. Cox  
                                                United States District Judge

Dated: February 3, 2020